RICHARD FROST,)
)
    *Plaintiff*,)
)
v.) Case No. 1:04-CV-75
)
HAMILTON COUNTY, TN, *et al.*,) Judge Mattice
)
    *Defendants*.)

## **MEMORANDUM**

Plaintiff Richard Frost brings this action against Hamilton County, Tennessee, Officer Timothy Mann, Officer Henry Ritter, Magistrate Charles Rucker, and Sheriff John Cupp pursuant to 42 U.S.C. § 1983 and § 1988, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of Tennessee. Specifically, Frost asserts that Defendants Mann and Ritter violated his right to be free from false arrest and the use of excessive force, that Magistrate Rucker violated his right to be free from false arrest, that Sheriff Cupp failed to supervise adequately Mann and Ritter, and that Hamilton County failed to train adequately Mann, Ritter, and Rucker. Frost also asserts state law claims of false arrest against Mann, Ritter, and Rucker and assault and battery against Mann and Ritter, over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff seeks compensatory and punitive damages for these claims.

Before the Court are two motions for summary judgment on all claims by Hamilton County, Mann, Ritter, Rucker, and Cupp. Frost has not filed a response to these motions, and the Court deems Frost to have waived opposition to the motions. E.D.TN. LR 7.2. The Court, however, cannot automatically grant the summary judgment motions merely because Frost has not filed a response in opposition. The Court is required to examine the record and determine whether the movants have met their burden of demonstrating the absence of a genuine issue of material fact and that they are entitled to summary judgment as a matter of law. *Stough v. Mayville Community*

*Schools*, 138 F.3d 612, 614 (6th Cir. 1998); *Wilson v. City of Zanesville*, 954 F.2d 349, 351 (6th Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

After reviewing the record, the Court finds that the motions for summary judgment by Hamilton County, Mann, Ritter, Rucker, and Cupp are well taken and will be **GRANTED**. Plaintiff Frost's claims against all defendants in all capacities under 42 U.S.C. § 1983 will be **DISMISSED WITH PREJUDICE**. Plaintiff Frost's state law claims against Mann, Ritter, and Rucker will be **DISMISSED WITHOUT PREJUDICE**.

I.      STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element

of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Under Federal Rule of Civil Procedure 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

## II.    FACTS

The relevant facts, seen in the light most favorable to plaintiff, are as follows.

In March of 2003, Richard Frost ("Frost") and his son Christopher James Frost ("Christopher") were engaged in an altercation inside the home they shared. (Court Doc. No. 17-2, Frost Dep. 20, 25-31.) At some point, Christopher called 911 to report the altercation. (Frost Dep. 36; Court Doc. No. 19-4, Aff. of Compl. 2.) When Officers Ritter and Mann arrived at the Frost home to investigate the 911 call, Frost opened the home's garage door and, while standing in the garage, asked the officers if he could help them. (Frost Dep. 36.) The officers yelled at Frost, telling him to get everyone in the house down into the garage. (*Id.* at 37.) Frost responded by asking what the officers wanted and what they were doing. (*Id.*) The officers repeated their order to get everyone down into the garage. (*Id.*) Frost responded, "No," and asked the officers for a search warrant. (*Id.*) The officers told Frost that they were responding to a 911 call, to which Frost responded that there had been no such call from his house. (*Id.*) One of the officers told Frost that they did not need a warrant to enter his house, at which point Frost told the officers to "Get the f***

out of my house." (*Id.* at 42.) At that point, one of the officers entered the garage and approached Frost. (*Id.*) Frost responded by straight-arming the officer and attempting to block the doorway into the house. (*Id.* at 42-43.) Both officers then grabbed Frost, placed his hands behind his back, and attempted to place him on the garage floor. (*Id.* at 44.) During this process, Frost continued to struggle and was "hysterical." (*Id.* at 43-44.)

After Frost was taken into custody, Christopher gave a statement to Officers Mann and Ritter regarding the altercation between him and his father. (Court Doc. No. 17-3, Statement.)

Thereafter, Frost went before Magistrate Rucker, who set Frost's bond at $50,000 for domestic assault, $25,000 for assaulting a police officer, and $5,000 for resisting arrest. (Frost Dep. 58.)

## III.  DISCUSSION

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2000). "Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000).

-4-

In this case, plaintiff alleges that he was subjected to false arrest and the use of excessive force in violation of his rights under the Fourth Amendment.

### A. Defendants Mann, Ritter, Rucker, and Cupp in Their Individual Capacities

Plaintiff Frost alleges that Messrs. Ritter, Mann, and Cupp are liable in their respective individual capacities under § 1983 for violations of Frost's constitutional rights in connection with his arrest. Frost alleges that Mr. Rucker is liable in his individual capacity under § 1983 for a violation of Frost's constitutional rights in connection with the setting of bond.

#### 1. Officers Ritter and Mann

Officers Mann and Ritter assert the defense of qualified immunity to Frost's claims against them in their individual capacity under § 1983.

The doctrine of qualified immunity shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The United States Supreme Court has articulated a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 598 (2004); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under this test, district courts must:

> consider whether "the facts alleged show the officer's conduct violated a constitutional right." If the plaintiff can establish that a constitutional violation occurred, a court should ask "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition."

*Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 201).

Once defendants claim the affirmative defense of qualified immunity, the burden shifts to plaintiff to demonstrate that the defendants are not entitled to the defense of qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). When a defendant moves for summary

judgment and asserts the defense of qualified immunity, the plaintiffs must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

In this instance, since plaintiff Frost did not file a response to defendants' motion for summary judgment, plaintiff Frost clearly has not met his burden of proving that the defendants are not entitled to rely on the defense of qualified immunity. As a result, Officers Mann and Ritter are entitled to rely on the defense, and plaintiff's § 1983 claims against Officers Mann and Ritter in their individual capacities will be **DISMISSED WITH PREJUDICE**.

### 2. Magistrate Rucker

Magistrate Rucker asserts the defense of judicial immunity to Frost's claim against him in his individual capacity under § 1983.

All judges, including state judges, are absolutely immune from liability under § 1983 arising out of the performance of their judicial functions. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Judicial immunity applies to acts that are performed in bad faith or maliciously. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Brookings*, 389 F.3d at 617. The only two instances in which judicial immunity does not apply are as follows: (1) when the judge's actions are non-judicial (*i.e.*, when the actions are not taken in the judge's judicial capacity); or (2) when the judge's actions were taken without jurisdiction. *Mireles*, 502 U.S. at 11-12; *Brookings*, 389 F.3d at 617.

In this case, Magistrate Rucker is entitled to judicial immunity. There are no facts in the record that would support a finding that Rucker was acting in a non-judicial capacity. In fact, Frost specifically states in his deposition that he believes Rucker was acting in his official capacity as a magistrate when Frost went before him. (Frost Dep. 88.) Likewise, there are no facts in the record that would support a finding that Rucker did not have jurisdiction to set Frost's bond in the

underlying criminal case.

Magistrate Rucker is entitled to judicial immunity, and plaintiff's claim under § 1983 against Magistrate Rucker in his individual capacity will be **DISMISSED WITH PREJUDICE**.

### 3. Sheriff Cupp

Plaintiff alleges that Sheriff Cupp is liable in his individual capacity under § 1983 as a result of his supervision of Officers Mann and Ritter. Sheriff Cupp asserts that he is not liable as the supervisor of Officers Mann and Ritter.

A supervisor can only be held liable for acts performed by his subordinates when " 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Timberlake v. Benton*, 786 F. Supp. 676, 693 (M.D. Tenn. 1992) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

The threshold question, then, is whether the conduct of Officers Mann and Ritter was unconstitutional. Plaintiff claims that the actions of the officers constituted excessive force and false arrest.

First, as to the excessive force claim, the right to make an arrest or investigatory stop is accompanied by the right to use some degree of physical coercion or threat thereof to effect the arrest or stop. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The officers' actions, however, must have been objectively reasonable under the circumstances. *Id.* To determine whether the officers' actions were objectively reasonable, a court must look at the particular facts and circumstances of each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or third parties, and whether the suspect was actively resisting arrest. *Id.*

In this instance, Frost states in his deposition that the officers did not use any force on him until he straight-armed one of the officers. (Frost Dep. 42.) After Frost straight-armed the officer, both officers used force against Frost to get him on the ground with the hands behind his back. (*Id.* at 43.) Frost continued to struggle as the officers tried to subdue him. (*Id.* at 43-44.) Frost admits in his statement that he was "hysterical" during this process. (*Id.* at 44.) Based on these facts, the officers' actions were objectively reasonable and did not constitute excessive force. Frost straight-armed one of the officers, which indicated a threat to the safety of the officers on the scene, and continued to struggle as he was being placed under arrest, which indicated his active resistance to the arrest. Under the circumstances, the officers' use of force was reasonable, and their actions, therefore, did not violate Frost's constitutional right to be free from excessive force.

Second, as to the false arrest claim, every arrest requires probable cause. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 592 (6th Cir. 1994). Probable cause for an arrest exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). The existence of probable cause in a § 1983 action ordinarily presents a jury question, "unless there is only one reasonable determination possible." *Gardenhire v. Schubert*,

205 F.3d 303, 315 (6th Cir. 2000).

In this instance, Frost was arrested for domestic assault, assaulting a police officer, and resisting arrest. (Frost Dep. 58.) Under Tennessee law, a person commits assault who "intentionally, knowingly or recklessly causes bodily injury to another" or "intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101. Additionally, a person resists arrest when he "intentionally prevent[s] or obstruct[s] . . . a law enforcement officer . . . from effecting a[n] . . . arrest . . . of any person, including the defendant, by using force against the law enforcement officer . . . ." Tenn. Code Ann. § 39-16-602.

Although the existence of probable cause ordinarily presents a jury question, in this case there is only one reasonable determination possible: that Officers Mann and Ritter possessed probable cause to arrest Frost for these offenses. First, Frost's straight-arming of one of the officers provided probable cause to arrest Frost for assaulting a police officer in violation of § 39-13-101. (*See* Frost Dep. 42.) Second, Frost's continued struggle when the officers sought to place him in custody provided probable cause to arrest Frost for resisting arrest in violation of § 39-13-602. (*See id.* at 43-44.) Third, the statement provided by Christopher Frost provided probable cause to arrest Frost for assaulting his son in violation of § 39-13-101. (Statement.) Because Officers Mann and Ritter had probable cause to arrest Frost, their actions did not amount to false arrest in violation of Frost's constitutional rights.

Because the actions of Officers Mann and Ritter were constitutional, plaintiff Frost's claim against Sheriff Cupp as the supervisor of Mann and Ritter must fail. Plaintiff's claim against Sheriff Cupp in his individual capacity will be **DISMISSED WITH PREJUDICE**.

### B. Defendants Mann, Ritter, Rucker, and Cupp in Their Official Capacities

Plaintiff Frost alleges that Officers Mann and Ritter, Magistrate Rucker, and Sheriff Cupp are also liable in their official capacities. "A suit against an individual in his official capacity is the

equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Therefore, plaintiff's claims against Ritter, Mann, Rucker, and Cupp in their official capacities are actually claims against Hamilton County. Because plaintiff has also sued Hamilton County, the claims against these defendants in their official capacities are redundant and will be **DISMISSED**.

### C. Hamilton County

Plaintiff Frost alleges that Hamilton County is liable under § 1983, based on a failure-to-train theory, for violations of Frost's constitutional rights in connection with his arrest by Officers Mann and Ritter and the setting of his bond by Magistrate Rucker.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipalities may not be held liable under § 1983 under the theory of *respondeat superior*. *Id.* at 691. Rather, an entity is responsible under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" alleged by plaintiff. *Id.* at 694. In other words, "[t]he plaintiff must . . . demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

A plaintiff can establish a municipal policy or custom in two ways: (1) a decisionmaker with final authority issues an official proclamation on the subject or (2) a custom is established through a course of conduct that is "so permanent and well settled as to virtually constitute law." *Hilliard*

*v. Walker's Party Store, Inc.*, 903 F. Supp. 1162, 1179 (E.D. Mich. 1995)

A municipality's failure to train its employees may serve as a basis for § 1983 liability when the failure to train amounts to deliberate indifference to a person's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The threshold issue is whether plaintiff has alleged a constitutional violation. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."). If plaintiff can show a constitutional violation, the second issue is whether the municipality's policy or custom was the "moving force" behind the injury.

With regard to the actions of Officers Mann and Ritter, although plaintiff's complaint alleges a constitutional violation by the officers, the facts in the record do not bear out that allegation. As explained above, the actions of Officers Mann and Ritter did not violate plaintiff Frost's constitutional rights to be free from false arrest and the use of excessive force. *See supra* III.A.3. As a result, Hamilton County cannot be held liable under § 1983 based on the officers' actions.

With regard to Magistrate Rucker's actions, regardless of whether plaintiff can show a constitutional violation by Rucker, a failure to train claim against Hamilton County based on Rucker's actions is improper. Counties have no duty to train magistrates and cannot therefore be held liable under a failure to train theory under § 1983. The imposition of such a duty to train would do violence to Tennessee's fundamental doctrine of separation of powers. Tenn. Const. art. II, §§ 1-2; *see Bergquist v. County of Cochise*, 806 F.2d 1364, 1371 (9th Cir. 1986), *abrogated on other grounds by City of Canton v. Harris*, 489 U.S. 378 (1989); *cf. Glidewell v. Town of Gantt*, 176 F. Supp. 2d 1257, 1260-61 (M.D. Ala. 2001).

Accordingly, plaintiff's claim under § 1983 against Hamilton County will be **DISMISSED WITH PREJUDICE**.

D.    **State Law Claims**

Plaintiff Frost also alleges state law claims of assault and battery against Officers Mann and Ritter and false arrest against Officers Mann and Ritter and Magistrate Rucker.

These claims are before the Court based on the Court's supplemental jurisdiction under 28 U.S.C. § 1367. Under § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the Court "has dismissed all claims over which it has original jurisdiction." Because this Court has dismissed all federal claims against all defendants in this case, this Court declines to exercise jurisdiction over plaintiff's state law claims against Officers Mann and Ritter and Magistrate Rucker. Therefore, these claims will be **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

After reviewing the record and the applicable law, the Court concludes that no genuine issue of material fact exists regarding plaintiff Frost's claims against Hamilton County, Officers Mann and Ritter, Magistrate Rucker, and Sheriff Cupp under 42 U.S.C. § 1983 and that these defendants are entitled to judgment as a matter of law. Accordingly, these claims will be **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims against Officers Mann and Ritter and Magistrate Rucker will be **DISMISSED WITHOUT PREJUDICE** based on a lack of jurisdiction. The motions for summary judgment by defendants Hamilton County, Officers Mann and Ritter, Magistrate Rucker, and Sheriff Cupp will be **GRANTED**.

A separate judgment will enter.

                                                 *s/ Harry S. Mattice, Jr.*
                                                 HARRY S. MATTICE, JR.
                                         UNITED STATES DISTRICT JUDGE

-13-

Case 1:04-cv-00075   Document 21   Filed 01/30/06   Page 13 of 13   PageID #: 27